Our final case for the afternoon, Schrader v. District Attorney York County, appellate number 22-2037. You can come up. We'll just give your colleagues a chance to make themselves comfortable. Good afternoon, Your Honors. Sean Summers for the Office of York County District Attorney. I am, I understand I'm splitting time with the Attorney General and I understand I have 10 minutes. The Attorney General has five minutes. I'd like to reserve three minutes if that's acceptable. Thank you, Your Honors. We believe the District Court erred in three general issues, the first of which was the District Court did not hold a hearing for a preliminary injunction. What would the District Court have held a hearing concerning? What facts are in dispute that are relevant for the Court's determination on the preliminary injunction? Well, a very simple fact that the Court actually identified in her opinion at footnote number four, you can see that the District Court did not even understand what relief the Mrs. Schrader was seeking. Do you mean relief or do you mean what documents she actually wanted to publish? Well, both, because the, well, factually, none of us know what documents she wanted to publish. If we had a hearing, she could have said, I want to publish A, B, and C. But this is not granny goose, a same day notice before a TRO. This is nine months. There's extensive briefing here. What precedent says briefing something over nine months isn't enough and you also need an oral hearing? Well, we would like to know what the Mrs. Schrader wanted to, well, there's no hearing, whether it takes seven months or seven days, there's no hearing to determine what Mrs. Schrader wants to publish, what Mrs. Schrader has. For example, she could have had social security numbers. That's one thing that's prohibited to be from release. She could have had people's dates of birth. She could have had all kinds of things that no one knows about. Well, cite Wright and Miller. Wright and Miller, Parsons Rule 65a, says you need five days notice. You've got months of notice here. But, Your Honor, if the district court does not hold a hearing, it doesn't matter how much notice you get of a preliminary injunction hearing. The facts are not in dispute here. This is all based on a legal analysis of the statute in the First Amendment. What is the testimony that Mr. Sunday would have offered? I mean, if that, those are legal inquiries. I mean, the court can decide this on legislative facts and judicial notice. Well, my second point I was going to get to is the judge applied, the district court judge applied this as applied to Mrs. Schrader. Okay. Not on a constitutional, a facial challenge. Now, having said that, she decided it as applied to Mrs. Schrader, but we don't know what facts Mrs. Schrader has. So it's not just D.A. Sunday testifying. It's also Mrs. Schrader and. But doesn't the district court have discretion? If it wants to go on a kind of a fact specific, what would you have done differently that it can hold a hearing, but do you have any case where we've overturned the district court's discretion saying, oh, nine months on the papers is not enough. You need to have an oral hearing, too. Your Honor, you keep referring to the timing. With all due respect, regardless of the timing, if there's no hearing, it doesn't have a case. The case is cited in our brief, which at least. Right. Granny Goose, you think that the difference in nine months and a day doesn't matter. If there's no well, even the T.R.O. role says if you're going to grant a T.R.O., you have to hold a hearing within X number of days for the preliminary injunction to take effect here. Here, not only the facts and dispute the judge's order on it. We're spending a lot of time on the hearing. You should certainly if my colleagues want to hear more. But I think we would like to hear something on the merits of some of the Supreme Court cases that we listed in the focus letter. Why, you know, those courts, there's a pattern of striking down these restrictions of saying you can do more narrow tailoring. Most states don't use criminal penalties to enforce these laws. One of them said, oh, more than 40 states don't use criminal penalties. Another one said there are fewer than five that use criminal penalties. So that suggests you could do something more narrow like civil penalties or limits on the leaker or limits on what you do with discovery. So what should we do with those cases where there's a pattern of not penalizing, especially not criminally penalizing someone who republishes what's already on, in this case, Facebook? Right, Your Honor. If we had a hearing and Ms. Schrader said, I only want to publish A, B, and C, which was already on Facebook, and I had no role in obtaining these documents from children and youth, we'd be having a much different conversation. Are you saying you want to rest your argument just on the hearing point, or do you also want to offer a substantive distinction of the cases that were in the focus letter? Both, because without a factual record, it's more difficult to make. So, for example, one of the cases that Your Honor cited, or whoever sent us the letter, was the Bartnicki v. Vopper, in that there was a factual record created. In fact, I think it was on summary judgment, so there's a lot of facts developed. And what was determined there, that was the person who received the audio tape was a completely innocent party, had nothing to do with anything other than receiving the information. And what the Supreme Court said there was you can't punish, whether it's civilly or criminally, the recipient of that information. But there was a complete factual record created, which was not done here. I assume your adversary would stand up when we get a chance to chat with him, and he says his client only wants to reproduce what I'm going to refer to as the Mercado documents, the information that's on Facebook, and nothing else. Just reproduce those. Could you enforce this criminal statute constitutionally against Ms. Schrader? Probably not. What would have been nice, even if it was just a call with a judge, Ms. Mercado published the five documents. We all look at it on the website together. We don't need any parties there for this. She published these five. Ms. Schrader is willing to stipulate that she's not going to publish anything else. But if you look at the district court's order, not only does it say she can publish that, republish that, she can publish whatever is in her possession. We know still today we don't know what's in her possession. But setting that aside, it even goes as far as saying she can publish whatever she receives in the future. Well, there's a problem with that on first standing, because it may not have come from the database, and so you couldn't prosecute her for that anyway. So, I mean, right? Well, we couldn't. But as it stands now, if she gets something in the future, she can publish that, and the judge already gave her a green light to do so, because it's specifically in the order. So if, in fact, my colleague comes up here and says, we only meant to ‑‑ the district court messed up. We only meant to republish what Mercado already put on the Internet, then, yes, I believe it should be remanded for a very limited hearing to confirm that's all she's going to. Okay. But let's say if we think she doesn't have standing as to other stuff, but she has standing as to the Mercado documents, and so the district court's order might need to be narrowed on remand. What is there to litigate? What facts need to be developed as to reposting Mercado documents? It's conceded, I guess, that this was on Facebook, right?  And she's not the one. She didn't hack the database. She got them from someone who had already received them in discovery and put them on Facebook. So is there anything to litigate on remand if these undefined other documents are out of the case? Is there anything to litigate? If we could stipulate to what documents were there, that would be done. The other issue is the level of scrutiny, which we think should be intermediate scrutiny. Let's say it's intermediate. Whether it's intermediate or strict scrutiny or whatever. We have Florida Star. We have Bartnicki. We have Daily Mail. We have these other cases. They're consistently rejecting criminal penalties, saying you could always tailor more narrowly. Other jurisdictions generally don't use criminal penalties. You could use civil penalties. You could restrict what the person who gets discovery does with the documents. But she didn't hack it. She didn't leak it. So then that's a narrow tailoring issue. Isn't that enough grounds, regardless of what the level of scrutiny is, to say, no, there are more narrow ways than punishing someone for republishing what's already on Facebook? We didn't punish her. She said she has a fear of punishment. Are you intending on prosecuting her for posting the Mercado documents? No, Your Honor. There was nothing mentioned. Mercado published the documents. She's a different story. Right. I'm not talking about her. I'm talking about Michelle. Right. So there was never anything indicating that Ms. Schrader was going to be prosecuted, other than the fact. Well, she has a fear of prosecution. Fear of prosecution. Right. I don't know if you have the authority to do this. Are you in a position to represent she will not be prosecuted, as the AG has said, they're not going to prosecute her for publishing the Mercado documents? For simply reposting whatever Mercado did, whatever that universe of things is, no, we're not going to prosecute her for that. So that's an easy answer. The problem is we don't know what she has. And the order says she can publish whatever she has. And we don't even know what she has. The judge doesn't know what she has because there was no hearing. So that's a problem for me to concede we won't prosecute her for anything because we don't know what she has. I have no objection to an injunction that's just limited to don't prosecute her for publishing things, criminally prosecute her for publishing any things that were already put on the Internet, the Mercado documents. From a practical perspective, Your Honor, they're not going to do that. The only reason that I hesitate is because there's literally, since there was no hearing, we don't know what conversations Mercado and Schrader had. So we don't know if they conspired to do this, they collaborated. We don't know any of that because there was no hearing. And there's been no discoveries because we're here. So we don't know any of those answers. Frankly, a hearing would be very short and maybe I won't be stipulated to once we get to that point, but the problem is we just leap past. What would you do differently at a hearing? What would I do differently? If you had a hearing, what would you do differently from what you've done now? What additional evidence or information would you put in? I would ask Ms. Schrader questions. I'd ask her where she got the documents, what they told her they were from. I'd ask her what other documents she has. Once I got the documents, I'd ask her questions about those. If there's Social Security numbers on the documents that she had, I'd say, are you going to post those on the Internet? Let me ask you about this. The Tenth Circuit has a case involving somewhat similar facts. And the Tenth Circuit said, okay, it's not easy to separate identifying and non-identifying information, but it can be done. So there's an argument for keeping Social Security numbers, dates of birth off the Internet, but when it comes to these issues of, you know, more generally what jurisdiction, et cetera, you could redact, you could redact out the identifying information and suppressing non-identifying information, I guess as the Peck case says, that can't survive the narrow tailoring requirement. You could just say, redact that stuff out rather than block the entire document. So isn't that a less restrictive alternative to protect privacy? A couple of issues, Your Honor. I guess if Ms. Schrader was testifying, I could ask her, does she plan on redacting Mr. Smith's, for example, Social Security number? But that then suggests a more limited injunction, not we will prosecute you for posting any of this stuff, but we would prosecute you only for posting Social Security numbers, dates of birth, but redacted. We're not seeking to prosecute you just for publishing non-identifying information. Well, specifically in this case, they wanted to publish identifiable information. That was the whole point of their publishing stuff for Dante. It's specifically related to him. It wasn't general. That's why this case is different than Peck. Is that right? Because the desire here was to identify who Ms. Schrader and Ms. Mercado thought the actual abuser was. The victim. That Bowie was not the perpetrator, and to bring light from their perspective to the agency's reaction to the reports of abuse. Am I correct? Right. That's correct. In addition to the Peck v. McCann case, the difference in that is it was an attorney who, I didn't say it, but presumably got the documents through the Brady v. Maryland disclosures, and she had those, and she stipulated that she would not release any identifiable information. And then there's, in DICTA in that case, it said certainly a judge and a prosecutor, presumably a defense counsel, can figure out what's identifiable and not identifiable. I have no doubt if the three of you, me, and my colleagues over here sat down, we could all figure out what is identifiable and not identifiable. The problem is letting Ms. Schrader pick and choose that and post it to the Internet. That just suggests that the wording of the injunction needs to go to things like and dates of birth and stuff, as opposed to the county where the incident occurred, the family composition, the notation that the report was false. I believe, again, we didn't threaten to prosecute her for releasing redacted, non-identifiable information. In fact, if you look at our brief, we said she can stand at the town square and say as much as she wants. It's the actual documents, which we presume would be released wholesale, which is what Ms. Mercado did. That's what we're objecting to. Not her saying, putting on the Internet, Mr. So-and-so did it, not Mr. Bowie. Even though she may have read that somewhere, she's not literally putting the document on the Internet, wholesale, without any redactions, without anything. And us, more or less, now we're enjoined from doing anything to do that. In addition to the tailoring things, and you mentioned the criminal penalties there of a misdemeanor, well, one lesser option is to get a court order saying you can't release this material. Well, here, the district attorney got a court order. Yeah, but that was after it went to Bowie. It was too late at that point, right? It was a sequence. Well, Bowie ended up releasing it, and thereafter, that's when the protective order was entered. Am I correct on the chronology? Correct. Okay. In the chronology. But that, there was an order not abided by. The response was to sue the judge for issuing the order. But in future cases, what you can do is you can release the discovery and require someone to sign a confidentiality agreement and, you know, keep them from, and enforce it against the person who's leaking, right? That's the normal way to deal with privacy concerns is to go after the leaker. You could do that, Your Honor, but in someone like Mr. Bowie's case who's facing murder charges, I don't think he's too concerned about tacking on a misdemeanor charge to a murder charge. So, realistically, I don't think there's any way for us to control Mr. Bowie with a court order. And I do believe if we required everyone to either agree to a court order or required the judge to issue, request the judge to issue a court order, I don't know that that's going to advance the ball. Sometimes discovery is just provided to counsel, and sometimes there are even instructions not to share the particular documents with the client. I mean, if you think it's that sensitive, you could slice it that finely. In the civil context, I know you're aware of that, and I'm not myself a prosecutor, so I don't know whether you can do that in a criminal context. In other words, withhold things from your own client. Under limited circumstances. Very limited circumstances. Schrader has argued that the disclosure of information surrounding the death of Dante, her son, unquestionably protect the speech. Do you have any doubt about that? Well, it's not the speech that we're concerned about. She can say whatever she wants. Well, she said it's a matter of public concern. Well, and I'm not going to – the standard for public concern under the court is so low that almost everything is a matter of public concern. But we're not talking about her saying something. We're talking about her publishing the children and youth documents on the Internet. That counts as speech, doesn't it? Clear. But if you look at Pennsylvania v. Ritchie, the U.S. Supreme Court said that none of these documents so sacrosanct that if you're a criminal defendant risking your liberty, not only can you not see them, your attorney can't see them. A judge can review them in camera and see if any of them can be viewed. So if your liberty is at stake and the government can prevent someone from seeing them, it seems pretty intuitive – maybe you'll tell me if I'm wrong – that children and youth should be able to withhold documents or in turn have some remedy if people disclose those documents in violation of the statute. You don't consider that a restriction of speech? Of not – Yeah, of speech. If she says it must be viewed for strict scrutiny. Right. If you look at the city of Austin case, one of the ones you said that we should review, it basically says just because you have to look at the speech, if that's what you want to call it, to figure out if they comply with the regulation, that doesn't trigger strict scrutiny. So I'd say the city of Austin supports our position in that context, and in fairness to the district court, I don't think she had that decision when she made her preliminary injunction decision. Wait for your time. I'll keep talking as long as you want. We're going to – you've split your time with your colleague from the state, so I have one other question then we'll hear from him. Your argument in your brief about statutory construction on release says release means liberty, and you only can be liberated once. Now, that's what you said, but I've now heard you describe, and in fact the district attorney's charging decisions reflect to us, or at least to me, that it's not just the first person who speaks. Anybody who's got that information and posts it can be prosecuted, even if they were not the first one. Am I correct? Because that's what happened here. But we didn't get prosecuted for prosecutorial discretion. I get it. He had other things going on at the time. He gave it to Mercado. She releases it to her. She puts it up. She's the second. And now we're talking about Ms. Schrader, the third. Doesn't that undermine your statutory construction argument? You're saying she's the third. I wish we had a factual record to create it. But she fears being the third. I'm sorry. She hasn't done it. I'm told she hasn't done it yet. It's okay. Getting away from theory and talking about practical consequences, obviously the further you get down the line, I mean, when I was getting prepared here, I thought you were going to give me some hypothetical where Ms. Mercado puts it on the Internet and then some guy in California is facing a similar situation and he sends it to his buddy. Is that release? Well, of course it is. But we're getting into all kinds of scenarios that are not really realistic. Now, I say it's not realistic for my example of someone in California, but Ms. Schrader is a blood relative of Mercado, and I can't tell you what her testimony would have been regarding her collaboration with Mr. Bowie or Ms. Mercado. But in light of her status and in light of her allegations, do you agree she has standing in order to bring this case because of her fear that she faces a potential prosecution? I believe that if that was the only issue, we wouldn't have appealed the decision from the district court. Well, it helps us know what you're thinking so we know what you mean. Yeah. I don't think the district court abused its discretion by saying she has standing. I think from a technical legal perspective, I say that not from a practical perspective. Of a real charging decision. Of a real charging decision. I understand. Okay. Well, we've taken a lot of your time. All right. Let me hear from your colleagues. Thank you. May it please the Court, my name is Sean Kirkpatrick. Here on behalf of Acting Attorney General Michelle Henry, now that Attorney General Shapiro is Governor Shapiro. My friend with York County said that in responding to one of your questions, Judge Schwartz, that the hypothetical of the individual in California, seeing it on the internet and publishing it, well clearly that's a release. We respectfully disagree. We have not appealed the decisions of the district court. So I'm not sure how we can hear you on that. You are exactly right. We did not appeal. We would hope that us providing you how the Attorney General's office interprets this statute and the word release might be of some assistance to the court. Because obviously what this court will say, even if you narrow it to as applied, is going to have weight when the facial challenge is discussed. And this is an important law. It protects primarily for purposes of the Department of Human Services, which I don't represent here. But it acts as a lock and a safeguard to prevent their employees and law enforcement agencies from inappropriately releasing documents. So that's the government, you know, protecting government, people who have access by virtue of their governmental position. And that would also include individuals who don't necessarily work for the government like foster parents or other individuals. Now we read release as meaning you're standing astride two worlds. The confidential state database world has one foot and the other foot is the public sphere. And you take something out of the statewide database and you put it in the public sphere. Once it's in the public sphere, if it is posted on Facebook, we do not consider that a release. We consider the publication, we consider that printing and that is the language that the Cox Broadcasting line of cases uses. We do not consider a release because you're not releasing it. It has already been released. That seems to be a merits issue, but I'm not sure it deprives Ms. Schrader of standing because the DA has been fighting this, at least up until now. I mean, it may be that oral argument clarifies some, but there seemed to be some real uncertainty about whether she might get prosecuted for reposting the Mercado documents. That was a subject of substantial briefing here, et cetera. So you don't see that as a reason why she lacks standing then, just a reason why on the merits there's really no justification for, no objection to an injunction protecting her from that prosecution. Standing as to the district attorney, no. We raise a 11th Amendment immunity issue. Of course, but you're not an appellant, so that's not before us. No, but it's. I'm not an appellant. Yeah, that's absolutely right, Your Honor, but it's subject matter jurisdictional. But not as to them. You're here effectively appearing as an amicus, right? The judgment as to the AG is not before us. We allowed you to appear because we would have allowed the amicus to appear, and your views are helpful and important, but it's ultimately about the judgment and the injunction as it stands against Appellant Sunday, the DA. We believe that, yes, I take your point, and your point is well made, Your Honor, acting as an amicus. My goal is to let you, is to inform the Court how we read this statute. Right. So we don't say something that might mislead people when we're in the scope of facial as-applied challenge. That's certainly helpful. But certainly a clear statute can be misapplied, and it can be unconstitutionally applied. I only have a minute left, so I just want to get two points which came up in questioning of my friend. The first is criminal penalties. We would note that criminal penalties are used when it comes to tax return information. That's 26 United States Code 7213. It is also criminal penalties when the information is classified information. That's Title 18 of the United States Code 798. Criminal penalties have a purpose and have a use, and we do not believe that simply because there's a criminal penalty here, when this is applied correctly at the leaker, not in everyone, but at the leaker, that merely because this has criminal penalties, it is somehow unconstitutional. And I would The defense is for criminally penalizing leakers. You are not defending criminal penalties applied to someone after it has been put into the public domain. That is correct, Your Honor. Now, I will just, and I'm not saying these are the facts of the case, we were not involved in the original prosecution, and as my friend says, there was no hearing. But we want to remind the Court that criminal conspiracies can exist. But outside of that caveat, we agree with Your Honor. I see my time has Your friend raised this issue. There's a possibility you could hypothesize, but there's nothing in this case to suggest that she's in the category of leaker by conspiracy, is there? No, Your Honor. In fact, paragraph 22 of her complaint specifically says all she wants to do is republish documents that were already on Facebook. We don't see that this statute prohibits that. Okay, and one aspect on that. One of the mistakes the District Court did, as we say in our brief, was conflate us with the District Attorney. We just want to remind the Court that we have very limited, enumerated prosecutorial powers. And Peck. If I could just speak very briefly about the 10th Circuit case and Peck. One, I would note that it held that the statute in that case was content-based, not content-neutral. Now, we believe that they did so in a single sentence, citing to Reed. We believe that City of Austin, frankly, undercuts that ruling. But it's important, whether this is strict scrutiny or independent scrutiny for purposes of evaluating it as to the District Attorney, because, and this is this is the Ward case. If it's in intermediate scrutiny, it doesn't have to be the absolute most narrowly tailored. That's the distinction between the two. So it still has to be narrowly tailored, but it doesn't have to be the most. How is this statute narrowly tailored? Because it only applies to the liquor, Your Honor. And it acts as a lock, not a censor. And it acts as a prevention to keep What do you mean by that? Acts as a lock, not a censor? We're not judging the content? We're just not allowing any publication of it? What does that mean? What does that phrase mean? That, what I'd like it to mean. General words. Yep, is my phrase. It means that it acts as a bar on the release of confidential documents contained in this database without looking at their content. Now that this database, like any database, is going to be limited in the type of documents it has. Why isn't this statute written to simply apply to the 16 categories of people or entities that can get access to this information? The statute reads any person. And if you keep talking about those who have access, the only ones who are going to have first-hand access are going to be government employees, foster parents, agents of the government who are caring for these children. So why, like, I'm not sure. I don't know how we can take your definition and map it onto any person, because that's what the statute says, any person. Absolutely, Your Honor. So someone who hacks into the system may not be an authorized person, but this But you have an access. There's a second provision that imposes criminal penalties under this statute that talks about those who are unauthorized accessors of the information. And it's like two different misdemeanors. And we believe that someone who unlawfully accesses it just so they can have it should be punishable. And someone who does that and then releases it should be separately punishable. Because this is So there's the hacker and there's the leaker. And one provision gets at anyone who hacks and another gets at people who leak, whether it's from a hack or something else. And our concern would be if we narrowly define the leaker to just certain individuals, that wouldn't encompass a hacker as well. But you have a different statute that deals with that. Yes, we do. But we believe that both are important because, again, this is documentation about abused children. I don't think you have any dispute from the panel with this about the sensitivity of the information at issue. I don't think your adversary would disagree that it's sensitive information in that regard, too. Judge Point, do you have any other questions? No. Okay, Counsel. Thank you, Your Honor. Okay. Thank you. May it please the Court, Aaron Martin on behalf of the appellee, Victoria Schrader. There's a lot that's been said in the Let's start with just what it is that Ms. Schrader wants to publish. Yes. Your Honor, she wants to be able to publish the documents that have been released by Mr. Bowie to her daughter, Ms. Mullinex, Ms. Mercado. And she wants to be able to disseminate those without fear of criminal prosecution. That's it. That's the universe. Yeah, that's the universe. And your colleague is correct to think that there might be some ambiguity because it's said in other materials coming into her possession. In briefing, which is a little bit different than the notice to a motion. But if we know the universe, that might prove to be very helpful for your colleague on rebuttal. The documents that are in her possession that she has received from her daughter, Ms. Mercado Mullinex, which came from Mr. Bowie, which he got through the criminal discovery disclosure process, that is what she wants to have the freedom to publish, republish, and discuss. And does she want to publish all personal identifiers? No. She wants to publish. She wants to name names, yes? Yeah. For instance, she has no interest in publishing Social Security numbers just to publish them. That doesn't advance her goal. Her goal is to advocate on behalf of the memory of her deceased two-year-old grandson. And that's on two fronts. And actually, she'd be okay with an injunction that agreed, you know, she won't be prosecuted for publishing these documents, but she's planning to redact Social Security numbers, dates of births. Had no plans to put people's home addresses up online. Okay. Without the benefit of speaking with her. You haven't spoken with her. As you're asking this question, I'll say I see absolutely no reason why Social Security numbers would need to go. You believe she has no present intention to put those things up? Oh, no. I believe she has no intention with Social Security numbers. What were the other categories? Date of birth and home addresses. Date of birth, the only one I could think there would be her own grandson, and he's been the subject of an extensive trial. Home addresses, I guess my question there would be as to whom. Anybody's. I think she could live with that being excluded and not disclosing that. Street addresses or something. Yeah, something. I think that's perfectly reasonable. What is it that she wants to make public? And what is preventing her from doing that? Sure, sure. If I could just make one fact known to the panel before I answer your question, Judge Fuentes, I don't know if the panel is aware, but Mr. Bowie, who was accused, has been acquitted of all charges. He was held in prison for four years, then had a four-week trial, and the jury in under three hours acquitted him of everything. There was a twofold reason why my client wanted to and still wants to, and these are in line with her daughter's interests, too, to use these documents, because, one, they tend to show in her view that Mr. Bowie, in fact, is innocent, that he is not the one who would have caused the horrific abuse that Danse suffered. And before the trial, part of that advocacy was rallying the public, thus the Facebook group, to try to persuade the district attorney to drop the charge. But post-verdict, of course, because an acquittal is not a declaration of innocence, it is to help rehabilitate Mr. Bowie's reputation. But the second part on this is because the York County Office of Children, Youth and Families, my client contends, did not intervene sufficiently when it was put on notice that Dante was in danger. And part of this is the kind of advocacy that our culture rightfully values, which is that when there's been a tragedy, and if there was something that could have been preventable to try to educate the public and to seek reform with the government, that they would take steps to prevent this kind of thing happening again. So there's an ongoing desire for her to be able to talk about what happened to her grandson, his tragic death, with the hopes of rehabilitating Mr. Bowie's reputation, and of encouraging and advocating for the county offices to be more proactive when situations are brought to them. Just to give Judge Pointes an answer to his question, then. I'm sorry, Your Honor. Might I ask you to say it again? What's preventing her from making her concerns public? Well, she is not prevented from discussing the concerns per se, but she is prevented from using these documents which are in dispute, which tend to show what I will use broadly speaking, the wrongdoing, the miscarriage of justice that was the prosecution against Mr. Bowie, and also the dereliction, as she views it, of the county office. So there is a citizen's review component within the statute. Why isn't that sufficient for her to get that second relief? That's not sufficient, Your Honor. The Reno case, I believe, addresses that, that the individual citizens have the right to take this information and put it into public discourse, and that the private citizens are not beholden to a government commission, to a government review. Yes, I'm not saying it might not have some check and balance value to it, but the First Amendment is personal, and I think it's the landmark decision which talks about if there's one thing that's generally agreed upon, the purpose of the First Amendment is to discuss the workings of government, and that's what this is. We're talking about authentic documents. No one's disputing that these documents are authentic. But with your position, then, does all of the privacy concerns become so second class that there can never be confidentiality of these materials? I believe that under the precedent, and as the Court directed us, we're talking about Landmark, we're talking about Cox, we're talking about Smith, leading right up to Bartnicki. Every time private concerns of privacy are raised, the Supreme Court has not really seemed to acknowledge that as being a superior consideration when we are talking about a litigant in the posture that my client is in. So we're talking about somebody who's lawfully obtained the information and the information is already in the public domain. Well, I would say it's even beyond that, Your Honor, because Bartnicki stands for the proposition that the information was illegally intercepted in the first place. Now, my client was a recipient of this, which incidentally is not criminal under the statutes. But your point is a forciore, that if in Bartnicki, even illegally leaked information was protected, then your client should be in a better position because this stuff was already up on Facebook. That's correct, Your Honor. That's what I'm saying. I don't see any crack that any sunlight is getting through, especially with Bartnicki. It seems to be an almost impregnable wall. I will address the city of Boston, though, because I know that's come up. Before you get there, let me just say with this, if a criminal prosecution is not narrowly tailored under the cases you've just described, what would be to accomplish what the Supreme Court has recognized as the compelling interest of this specific statute on protecting the privacy of the victims and to encourage those who are aware of abuse to feel confident they can report without retaliation? What would be the proposal to be an appropriate method for the state to be able to ensure those goals are not interfered with? Okay. And first of all, I want to acknowledge, Judge Schwartz, that you are absolutely correct. We do not dispute that this is important information that the government does have an interest in, broadly speaking, keeping confidential. In terms of more narrowly tailored approaches to dealing with this situation, we think that, actually, if you look at this case, the fundamental breakdown, as I can reconstruct it, is this. There were a couple discovery orders in the criminal case, and the district attorney was a party to that, as a representative of the Commonwealth. Now, in a criminal case, of course, you would not have, for instance, the Office County of Children and Youth, or you would not have the State Department of Human Services as a party there. And I think maybe the breakdown here occurred, where the interests of the county office and the state department were not at the forefront of anyone's mind when the discovery orders came out. But I think Judge Schwartz wants to know, what concretely should the government do going forward? Right. Should it impose? You don't get these documents until you sign a confidentiality order. Should it redact out dates of birth and Social Security numbers, or make those for attorneys' eyes only? Civil penalties. Like, what are the things that are narrower alternatives to prosecuting your client? Right. And I was getting, actually, to the very order that was issued so far after the fact that it's almost, you know, unseeable from the beginning of the case, which was some sort of a protective order, or non-dissemination order. Because we know that judges, trial judges, have control when it comes to discovery. True, criminal cases are a little bit different from civil cases. That's true. But there could have been a request by the district attorney up front for some sort of direct non-dissemination order, and there wasn't. And that's why I was mentioning the county office and the state department not being parties to the prosecution. Because I think that was probably not at the forefront of the prosecution's consideration. So a state law, for instance, that might say that a district attorney shall consult with or something of that nature to ensure that the interest that the state views as important in this information would be considered as to its protection from further dissemination would also then be automatically in the prosecutor's mind. And I think the fact that the district attorney, after the fact, went and sought the order shows that they are viewing it as some sort of an effective remedy. Now, I disagree with the comment that such an order would never restrain a defendant in the position of Mr. Bowie. Well, I disagree with that, and I think that that kind of an allegation is a little bit rich, shall we say, in the context of a man who was imprisoned for four years before being acquitted on every charge. You know, there was a grave injustice that was in progress here, and my client wanted to talk about it and show real evidence, real documents that tended to prove his innocence, and yet the threat of prosecution, which was very real because her own daughter had been prosecuted for disclosing the same documents, is something that squelched it and now continues to be a looming presence until we get to the stage of a permanent injunction. I will say I was encouraged to hear some rapprochement from the district attorney's counsel to our position, which I haven't previously heard in this case, but I submit that this court is an awkward place for this kind of thing to be hashed out. I mean, I'm happy, for instance, Judge Bevis, to answer your questions or Judge Schwartz or Judge Fuentes about Social Security numbers, but I can only do that to a limited degree as I'm standing arguing here today. The fundamental problem is that the government did not go through the steps that are required under strict scrutiny in order to show that this is the least restrictive means. If you can bring that back, because you were going to talk about City of Austin before we interrupted your flow, and I would like to hear, is this a content-based restriction? I mean, both of your friends say it isn't, but then in the process they talk about how important it is to keep privacy for children and child abuse, which veers back towards what the content is. Right, and I think, first of all, from City of Austin, there's an important sentence. The Supreme Court said, nor do we cast doubt on any of our precedents recognizing examples of topic or subject matter discrimination as content-based. I think that's saying that this line of cases culminating in Bartnicki is still good law. I think they're expressly saying that. Don't read any of this as abrogating sub silencio or in any way modifying that. Read, clearly they said, all right, courts have taken this too far and we need to pull it back. To what degree those signage cases go forward and how they go forward, I think, is anyone's guess. But that's an area where you have something that was connected to land use, so we kind of have an innate feeling that's qualitatively different from pure speech about government. But the court was careful in City of Austin to say, we're not abrogating anything that's come before. And when you look at Bartnicki, when you look at Smith, all these cases, they're describing content-based discrimination. That's what this is. Let's go back to this content-based issue again because the statute says you can't release that which is in the database. It's talking about a location. We've heard statements today that you can't release the documents, but you can talk about the subject. Someone could go out and start expressing what it is they know about the information. Doesn't that make this sound like a content neutral? It's all about where the information comes from, not what the information is? No, I disagree with that, Your Honor. And one reason, there are many, but one reason is because that premise of that argument from counsel is based upon, encompasses the notion that the only reason someone would talk about it is to talk about the specific child abuse investigation, as opposed to the way the whole system is working. So there's a broader reason why my client wants to talk about the specific details of her own grandson's death. Yes, she wants to talk about his death and what happened there. But she also has a desire for reform of the system so this doesn't happen again. The language of the statute itself almost contains the word content because it says a person who willfully releases or permits the release of any information contained in the statewide database. Yes, it could be like where it's located, right? Contained could mean that. I don't know if the database has a physical location, but yes, it could be read that way. It seems that if Ms. Schrader wanted to go out and recite her daughter, Ms. Mercado made a report that the child was hospitalized and the following injuries were observed, she could recite what people said to her as long as she wasn't referring to the database, doesn't that make it content neutral? But that puts off limits discussion about the county office's specific failure in this case and the implications beyond that for their failure in this case. Because you're saying the only place that could have been learned is from information in the database. That shows how the office was processing it, was viewing this and what they did and what they didn't do. That's what really makes her argument stronger. I mean, it's the evidence, so to speak. Of the agency's behavior. Because that she couldn't have learned from another source, you're saying. I don't see how else, without getting the internal agency reports, what better evidence there would be as to the way the agency handled or didn't handle the prior warning of the abuse. Yes.  Thank you. May I speak again, Your Honor? You may. You have three minutes. Mr. Summers, I'd like to start with you. You spent a lot of time in your opening argument about right to the hearing. And the foundation for this seems to be Rule 65. But Rule 65 doesn't use the word hearing. You treat it as implied. Rule 65 talks about notice. Well, it's nine months of briefing on this. Is there any argument that you didn't have enough notice here? I noticed an opportunity to be heard. I would view that as an opportunity to present testimony. Your Honor, there's nothing I can do. Literally, there's nothing me or any of my colleagues could do while the judge literally sits on it for seven months. So you say nine months as if anyone in this room was supposed to do something. Literally, you file something. With all due respect, we can't call up a judge and say, why don't you move faster? Why don't you schedule a hearing? We can't do that. But still, the rule itself doesn't say there's going to be a live hearing. No, but a judge should make factual determinations so she can apply the law. Any of the cases that you told us to review, all either had stipulated facts, which we obviously don't hear, or it was later on in the proceeding, a motion for summary judgment or a trial on the merits. None of these cases, unless it was stipulated, I forget which one, but it was one with a stipulated fact, we're not stipulating to that here. But now we have a representation as to what the documents are. The documents released to Ms. Mercado that were secured by Mr. Bowie are the documents that Ms. Schrader seeks to publish. We now have our factual record by representation. I wish we created factual records here. We don't. But by representation, we now know what the universe is. My understanding is from what you said earlier was, if those are the only documents at issue, there will be no prosecution. If that's the case, why aren't you, why is there an appeal of this injunction? Well, the primary reason of the appeal is the loose language, from our perspective, the loose language the judge issued. If, for example, the judge simply said, Ms. Mercado published these five following documents, they're already out there on the Internet, and Ms. Schrader filed a preliminary injunction saying, I want to share them or whatever the social media talk is for republishing. We'd say, why are we wasting our time here? But that's not what the judge ordered. The judge ordered any documents that are possession, and you asked the question a second ago, what does Ms. Schrader currently want to publish, and I didn't hear a specific answer that only what Ms. Mercado already published. I heard what is in Ms. Schrader's possession. We don't know what is in her possession sitting here. None of us do. It may relate to her grandson, it may relate to something else, it may have someone's social security number, it may not. But a hearing would have flushed that out. It would have said, simply, a simple hearing saying, Ms. Mercado had these five following documents, she can publish, or Schrader can publish those on the Internet because they were already out there. She's saying she's not going to publish anything else. End of the story. But we are where we are basically because of that order. I'm going to ask something. You may not be able to answer it, but is there a possibility that you and your adversary could confer and see whether or not a stipulated injunction that makes clear that Ms. Schrader would like to publish and she says the Mercado documents, hypothetically, Mercado documents that are currently on Facebook, that's all I want to do, and that the prosecutor says, we agree not to prosecute her for republishing that information. And ask us, hypothetically, say because we've agreed to this, we would like to remand with directions that the district court enter this more tailored injunction. Could that resolve this appeal? It likely could. The only caveat is I was hoping that you were going to direct the district court to apply intermediate scrutiny because what's going to happen is we're going to be back at the district court and if the district court is not told what level of scrutiny to apply... So are you conceding or are you not conceding that she can republish these documents? When you say intermediate scrutiny, it sounds like you want to live to fight another day on this injunction. Are you willing to say republishing these five, we wouldn't really be here or not? I'm saying both. She can publish whatever Mercado has already posted, essentially, and we want to live to fight another day because we think the constitutional challenge, the facial challenge to it, is inappropriate because it's not content-based. The reason it would be content-based is if we said... So the question is are we going to strike down the statute entirely? But if this were limited to an as-applied, she can do this in this circumstance. Would you still be fighting that under intermediate scrutiny on remand or would you concede that? Well, it's the plaintiff's case. I suspect that they're going to fight it on a facial challenge. I'm not the one to answer that. I would like the whole case to be dismissed. If I simply could say we'll agree that Ms. Schrader can post the five things that Ms. Mercado already posted and that resolves everything, then yeah, we'd probably agree to that today with rather having a showdown on whether there is intermediate scrutiny or strict scrutiny because you can only imagine the consequences if this court says it's strict scrutiny, it's content-based because that opens up Pandora's box. I mean, literally, children... But if you don't speak, it's just a district court's opinion on a preliminary injunction. I know. The problem with that is she said it's strict scrutiny. So hypothetically, you're saying you couldn't accept that. You need a ruling from this court because you disagree with the standard of review. I would like a ruling from this court saying it's intermediate scrutiny. And if you think about it logically, we're not saying you can... No, it doesn't make sense for me to put on my old magistrate judge hat and say, why don't you guys meet me in the conference room? We'll have a conversation. Not that I'm authorized to do that anymore because I'm not. But would that not be a useful conversation? Because you represent a client. And if you need a ruling from a court, we're in the business of that. Right. I also want to be practical about this in light of the productive conversations I think that has occurred during this argument by each side in terms of what your real practical concerns are as it relates to this specific case. And so I want to make sure we're using our time efficiently. Good suggestion. Thank you. But I don't know whether or not... You might not be in a position to be able to do that. Right. You have a right to have this case adjudicated. We don't want to suggest that you're going to force or press anyone to do. We're just wondering whether this dispute ought to go forward or not. And, you know, if you don't agree to something, we'll go ahead and resolve it as usual. But we're just exploring. Right. And sitting here on the fly answering that, I suspect others might want some input... I would imagine maybe so. ...whether I'm going to, not just my client, but maybe even, for example, the Attorney General, whether they want to leave a district court decision sitting out there that says this statute requires... No disrespect. The Attorney General didn't appeal this ruling. No disrespect at all. And we appreciate hearing from you. But really, we're looking at the two, appellee and appellant, in this case. Right. Without talking to my client, I can't specifically commit to that. I know as a practitioner, if I was on their side, I'd be citing that district court every day of the week, saying this district court already said strict scrutiny and that was the end of the conversation. The appeal just disappeared through settlement or whatever. So I would cite that case every day of the week. So from a larger perspective, a resolution might not be something you'd be authorized to engage in. I completely understand that. You don't have to respond to me on that. And from the content position, we're not saying you can only release documents that say children and youth are doing the best job on the planet, but you can't release documents that say children and youth did a lousy job. We're just saying you can't release any of those. So from our perspective, it is content neutral. That means it's not viewpoint-based. It's not yay, but not boo. But even if it's not viewpoint-based, it could still be content-based. But it isn't content-based other than what they could potentially have in the file. The disagreement between you and your friend on the other side is the database itself is a particular kind of content. This is not a restriction on leaking from all state databases or other stuff. It's a content-defined set of documents that the state holds. Well, that's only because that's their function. Just like if you had the Department of Revenue or the IRS, they're not going to have children and youth documents. They're going to have tax documents. That's because that's the content that they're authorized to govern. I think that's what Judge Bevis' point is. Right, right. But you could have a content neutral like picking out a subset of state documents based on its dealing with child abuse. That's a little different from saying any state document. Well, I know you're not trying to make my point, but I thought you just did by saying this is a subset related to us. If we had a statute that said you couldn't leak any government documents, well, then, yeah, that would probably be a problem. No, that would be content neutral. But here, it's just child protective documents. It's not state tax documents. It's not other things. Anyway. I suspect the tax authorities say you can't release tax returns. That is specific to that, but I would hope none of us would say it's unconstitutional if it says you can't release tax returns. It's a similar issue there, but it's focused on the department. The taxing authorities have tax returns. Children and youth have child abuse information. All right. Thank you. We thank all counsels, me too, for their hard work and participation in this argument. We're going to ask for a copy of the transcript of the argument to be prepared, and we ask that the two sides share the expense of securing that for us. We'd appreciate it. You can speak with Marina, and she'll help you. Otherwise, we are concluded for argument.